26 CV 01790

JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
NUNYO DEMASIO,

                            Plaintiff,

            vs.

NEW YORK FOUNDATION FOR SENIOR CITIZENS GUARDIAN SERVICES, INC.

                            Defendant.

---------------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Nunyo Demasio, complaining of the Defendant, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This civil rights action challenges the categorical exclusion of a 91-year-old ordained minister from participation in her own congregations and longstanding faith community by her state-appointed guardian. Defendant New York Foundation for Senior Citizens Guardian Services, Inc. ("NYFSC"), acting under color of state law and exercising plenary authority over Rev. Dorcas Demasio's daily life, has enforced, and continues to enforce, this prohibition without written judicial authorization or individualized findings of risk. For approximately 11 (eleven) months—including seven months under NYFSC's guardianship—Rev. Demasio has not attended a single service at her multiple congregations or had in-person contact with fellow clergy or congregants.

2. Plaintiff Nunyo Demasio is Rev. Demasio's eldest son, her former hands-on caregiver, previous attorney-in-fact, and the Petitioner who initiated the Article 81 guardianship proceeding to secure *limited* protection for his mother to counter vulnerability stemming from dementia. He brings this action in his own right because NYFSC's categorical prohibition independently burdens his own Free Exercise and familial association interests. He also seeks prospective relief to vindicate Rev.

1

Demasio's rights under settled third-party standing principles and, in the alternative, pursuant to Rule 17(c), because Rev. Demasio is practically hindered from seeking relief on her own behalf.

3. Plaintiff does not ask this Court to overturn the state guardianship order. For purposes of this action, Plaintiff treats the August 7, 2025, Order and Judgment of the Supreme Court, New York County (the "Order"), as operative and does not seek federal review of the state court's determination of incapacity or its appointment of a guardian. Plaintiff has a pending state appeal addressing issues of guardianship selection under state law. This action is independent of that appeal and seeks relief strictly for ongoing federal constitutional violations not authorized by the Order.

4. What Plaintiff challenges is the guardian's extrajudicial decision to impose a blanket prohibition on Rev. Demasio's religious life—an indefinite restriction that finds no support in the Order's text and that affirmatively contradicts the Order's directives. It affirmatively requires the guardian to "afford the incapacitated person the greatest amount of independence and self-determination" and to respect her "personal wishes, preferences and desires with regard to managing the activities of daily living." Order at 7.

5. This case presents a narrow federal question: whether a state-appointed guardian, exercising plenary authority under color of state law, may impose a categorical prohibition on an incapacitated person's religious participation absent written judicial authorization, individualized findings, and procedural safeguards—and whether such a prohibition may be maintained when the guardianship order itself affirmatively requires the guardian to respect the incapacitated person's preferences and maximize her self-determination. A guardian's authority to manage daily needs does not include the authority to eliminate fundamental constitutional rights absent written judicial authorization supported by individualized findings.

2

6. Plaintiff does not seek a federal order changing Rev. Demasio's residence, removing or replacing the guardian, or altering the scope of powers granted by the Order. He seeks only to enjoin enforcement of a categorical prohibition on religious participation that exceeds the authority conferred by that Order.

7. Plaintiff asks this Court to declare that the ongoing deprivation of fundamental constitutional and statutory rights violates the First and Fourteenth Amendments and to enjoin NYFSC from continuing to impose a categorical prohibition on Rev. Demasio's religious participation. Because Rev. Demasio is a nonagenarian with cognitive impairment, each week she remains severed from congregational worship and clergy care results in permanently lost religious experiences that no later order can restore.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights). This action arises under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant maintains its principal offices in New York County and the events giving rise to the claims largely occurred in this district.

10. Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202. Injunctive relief and attorney's fees are authorized under 42 U.S.C. §§ 1983 and 1988.

**This Action Does Not Seek Review of the State Court Judgment**

11. This action does not seek federal review or reversal of the Order. Plaintiff does not ask this Court to evaluate the state court's determination of incapacity, its appointment of a guardian, or any issue raised in the state proceeding. Plaintiff seeks no compensatory or punitive damages—

only nominal damages to prevent mootness through voluntary, temporary cessation of the challenged conduct.

12. Plaintiff strictly challenges the extrajudicial policies and practices of NYFSC that: (a) are not required or authorized by any written order; (b) are implemented at NYFSC's discretion under color of state law; (c) have the effect of imposing a categorical prohibition on religious exercise and familial association that no state court has ever expressly directed; and (d) affirmatively contradict the Order's own requirement that the guardian respect Rev. Demasio's independence, self-determination, and personal preferences.

13. Plaintiff's injuries are caused by NYFSC's independent exercise of state-delegated authority, not by the text of the Order itself. Because Plaintiff does not seek appellate review of any final state judgment, this action is not barred by the Rooker–Feldman doctrine. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (Rooker–Feldman is a "narrow" doctrine confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments").

14. Younger abstention is inapplicable. This case does not seek to enjoin any ongoing state criminal prosecution, civil enforcement action, or civil proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions," as required by *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013). Plaintiff seeks prospective relief against a guardian's unconstitutional policies, not interference with the state court's adjudication of incapacity or supervision of the guardianship. The Second Circuit has held that routine probate and analogous civil matters do not warrant Younger abstention merely because they implicate state-court authority. *Cavanaugh v. Geballe*, 28 F.4th 428 (2d Cir. 2022). Article 81 proceedings are not designed to adjudicate independent federal constitutional claims, and no state court—trial or

4

appellate—has addressed the constitutional validity of the categorical religious restriction challenged here.

15. The Article 81 proceedings and Plaintiff's appeal do not warrant a stay or dismissal under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Colorado River applies only in "exceptional" circumstances involving parallel state and federal proceedings presenting substantially the same parties and issues. This action asserts independent federal constitutional claims under 42 U.S.C. § 1983 and does not seek review, modification, or supervision of the state court's guardianship order. The federal claims presented here are not parallel to the state court's discretionary supervision of the guardianship proceeding, and federal courts retain a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Id.* at 817.

**PARTIES**

16. Plaintiff Nunyo Demasio is the eldest son and former hands-on primary caregiver of Rev. Dorcas Demasio. He once served as her attorney-in-fact and initiated an Article 81 petition (Index No. 500010/2023, Supreme Court, New York County) to secure limited guardianship for his mother, countering financial mismanagement and undue influence. He is also the Petitioner–Appellant in the related appeal. For decades, he shared congregational membership and communal religious practice with Rev. Demasio.

17. Defendant New York Foundation for Senior Citizens Guardian Services, Inc. ("NYFSC") is a New York nonprofit corporation with its principal office at 11 Park Place, Suite 1116, New York, NY 10007. NYFSC was appointed guardian of the person and property of Rev. Dorcas Demasio by the August 7, 2025, Order. In that capacity, NYFSC exercises plenary state-delegated authority

over every aspect of Rev. Demasio's life and acts under color of state law within the meaning of 42 U.S.C. § 1983.

18. NYFSC is regularly and systematically appointed by New York Supreme Court justices as guardian pursuant to Article 81 of the Mental Hygiene Law. In that role, NYFSC exercises powers that, under New York law, only a court-appointed guardian may exercise over an adult, including control over residence, visitors, medical decisions, and access to religious and social life.

19. Absent state delegation under Article 81 of the Mental Hygiene Law, no private entity would possess lawful authority to prohibit an adult from attending church, receiving clergy visits, or maintaining contact with her religious community. By assuming and exercising such authority pursuant to court appointment, NYFSC performs a public function traditionally reserved to the State. See *West v. Atkins*, 487 U.S. 42, 54 (1988); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–59 (2d Cir. 2008). Unlike the private provider in *Sybalski*, NYFSC's authority here exists solely by virtue of judicial appointment and is expressly invoked as a directive of the Court.

20. NYFSC has implemented and maintained the categorical prohibition on Rev. Demasio's religious life by invoking and relying on "directives of the Court" that have never been set forth in writing. NYFSC has asserted in correspondence that "our office must follow the directives of the Court" in enforcing a no-contact regime that does not appear in any written order. Absent the August 7, 2025, Order, NYFSC would possess no authority to control Rev. Demasio's access to clergy or religious participation. By attributing the conduct to judicial authority and disclaiming independent judgment, NYFSC's actions are "fairly attributable to the State." See *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). A guardian who

6

invokes state authority to justify the categorical elimination of constitutionally protected activity cannot simultaneously disclaim the obligations that accompany state action.

**FACTUAL ALLEGATIONS**

**A. Rev. Dorcas Demasio's Religious Life and Identity**

21. Rev. Dorcas Demasio is 91 years old with dementia. In April 2025, she was removed from her Harlem home of more than fifty years and placed at an undisclosed location. On August 7, 2025, Defendant NYFSC assumed plenary guardianship pursuant to court order and has since maintained her placement at an unidentified "residential facility." The daughter of a Methodist pastor, Rev. Demasio is an ordained minister and a graduate of New York Theological Seminary who also attended Union Theological Seminary one block from her rent-stabilized apartment in Manhattan's West Harlem. She also earned an advanced degree from Columbia University after graduating from New York University. The specific legal classification, licensure, and funding structure of the facility where Rev. Demasio resides are within Defendant's exclusive knowledge and have not been disclosed to Plaintiff.

22. For decades, Rev. Demasio held senior leadership roles at two Manhattan congregations: St. Paul & St. Andrew United Methodist Church and Convent Avenue Baptist Church. She regularly attended services at St. Patrick's Cathedral and occasionally at the Church of St. Francis of Assisi. She traveled overseas on multiple occasions in her capacity as a religious leader.

23. Rev. Demasio's participation in worship, Bible study, congregational life, and pastoral fellowship was not ancillary to her identity. It was the defining structure of her adult life for more than half a century. Rev. Demasio also maintained longstanding devotional relationships outside congregational services. She conducted regular Bible study sessions with numerous individuals, such as Deaconess Judith Walker, for approximately three decades. Rev. Demasio prayed and

studied Scripture with people inside and outside her church, including her close friend, Selina Dzameshie—often in their native Ewe language.

24. Plaintiff shared in this religious life, starting as a young boy in the 1980s with his four siblings at Park Avenue Methodist Church and Rock Church, where he played the trumpet. Rev. Demasio drove her children to church in a white Ford Fairmont station wagon emblazoned with an "I Love Jesus" sticker. Plaintiff attended services and congregational events with his mother, was part of the same faith communities, and participated in the communal religious practice that defined their shared spiritual life. In his role as a dedicated caregiver from 2019 to 2022, Plaintiff and Rev. Demasio regularly attended St. Patrick's Cathedral together to light devotional candles. During the pandemic, they participated in virtual meetings organized by St. Paul & St. Andrew United Methodist Church. They also attended services occasionally at the Church of St. Francis of Assisi.

**B. APS's Involvement and the Appointment of Plenary Guardianship**

25. Plaintiff commenced the Article 81 proceeding in the Supreme Court, New York County, by filing a verified petition on September 23, 2024. His attached statement asserted that Rev. Demasio—vulnerable to exploitation as an elderly woman with documented impaired judgment— required limited protection to address financial exploitation, isolation, and abuse of process. Plaintiff sought targeted safeguards—not community removal, indefinite isolation, and religious restrictions.

26. Between 2022 and 2024, Adult Protective Services ("APS") received multiple referrals concerning Rev. Demasio's safety and welfare, including two referrals from Plaintiff. In each instance, APS opened and subsequently closed investigations without providing any services or seeking court intervention.

8

27. In June 2024, Plaintiff sent a detailed written warning to New York's Social Services Commissioner Molly Wasow Park, identifying specific and imminent risks to Rev. Demasio's safety and requesting immediate intervention. Five days later, Rev. Demasio fell while unattended, requiring approximately three weeks of hospitalization and several months of rehabilitation. On August 1, 2024, APS closed its investigation, determining that Rev. Demasio had sufficient mental and physical capacity. That same day, her insurance activated 24/7 home health aide services.

28. On May 13, 2025, APS filed a cross-petition in the pending Article 81 proceeding seeking plenary guardianship of Rev. Demasio's person and property and proposing NYFSC as guardian. The cross-petition asserted, among other things, that she had "no one available who is willing and able to assist her responsibly," notwithstanding the identification of several personal guardian candidates in the proceeding, led by a licensed social worker and Certified Dementia Practitioner. The relief APS sought extended beyond the limited, customized protections requested in Plaintiff's original petition. By Order and Judgment entered August 7, 2025 (Hon. Phaedra Perry-Bond, J.S.C.), the Supreme Court, New York County, appointed Defendant NYFSC as plenary guardian.

**C. The Order Contains No Religious Restriction, and Affirmatively Requires Respect for Rev. Demasio's Values**

29. The Order is 13 (thirteen) pages, comprehensively enumerating the guardian's powers, duties, and limitations. It addresses the guardian's authority over property, finances, medical decisions, residential placement, legal proceedings, insurance, tax filings, mail, education, travel, and numerous other domains.

30. The Order contains no finding, directive, or provision restricting Rev. Demasio's congregational participation, in-person clergy access, Bible study attendance, or any other aspect

of her religious exercise. Neither the word "church" nor "religion" appears in the Order. The word "worship" also does not appear.

31. To the contrary, the Order incorporates statutory directives that contradict the total elimination of Rev. Demasio's religious life. Specifically, the Order provides that the guardian shall, pursuant to MHL § 81.20:

"[E]xercise only those powers that the Guardian is authorized to exercise by order of the Court." Order at 7 (item 1).

"[E]xercise the utmost care and diligence when acting on behalf of the incapacitated person." Order at 7 (item 2).

"[E]xhibit the utmost degree of trust, loyalty and fidelity in relation to the incapacitated person." Order at 7 (item 3).

"[A]fford the incapacitated person the greatest amount of independence and self-determination with respect to property management and personal needs in light of that person's functional level, understanding and appreciation of his or her functional limitation, and personal wishes, preferences and desires with regard to managing the activities of daily living." Order at 7 (item 5).

32. No finding exists that Rev. Demasio's religious practice poses any risk to her safety. No court has directed that she be barred from worship with her congregations, in-person clergy visits, or faith-community contact. The Order does not grant the guardian discretion to categorically eliminate protected religious exercise as a matter of policy.

33. The Order's affirmative obligation to maximize independence and respect personal preferences is incompatible with the blanket elimination of a lifelong minister's religious practice. In the case of an ordained minister with decades of religious leadership, that obligation requires individualized

consideration of her vocation and expressed preferences. A categorical restriction imposed without articulated standards or findings is inconsistent with the Order.

**D. The Order's Visitor Provisions Further Confirm the Absence of a Religious Ban**

34. The Order addresses visitation and identifies specific individuals who "shall be permitted to" visit Rev. Demasio. Order at 13. The Order contains no language imposing a religious restriction, barring in-person clergy visits or congregational worship, or otherwise limiting Rev. Demasio's ability to participate in her religious life.

35. Nevertheless, NYFSC has implemented and enforced a de facto prohibition on in-person religious contact, invoking unwritten "directives of the Court" despite the absence of any written order imposing such restrictions.

36. The Order further provides that if the Guardian or Court Examiner identifies additional family members or friends who "are, or arguably should be, entitled to" visit, their names and relationships shall be furnished to the court. Order at 13.

37. These provisions contemplate that Rev. Demasio will receive visitors, including congregants and family members. Nothing in the Order authorizes the guardian to convert the visitation framework into a mechanism for severing Rev. Demasio from her clergy or faith community. Nor does the Order contain any *sub silentio* authorization for the categorical elimination of in-person religious participation.

**E. The Total Deprivation of Religious Life**

38. Since the imposition of NYFSC's guardianship, Rev. Demasio has had no in-person access to clergy. Senior leaders of her congregations have been denied in-person visitation, including Cynthia Round of St. Paul & St. Andrew United Methodist Church and Rev. Booker T. Morgan of Convent Avenue Baptist Church. She has had no in-person contact with congregants or Bible

11

study partners and no participation in the faith communities that shaped her identity for more than 50 (fifty) years.

39. In September 2025, after Plaintiff filed a stay motion in the Appellate Division raising the absence of written authority for the no-contact regime, NYFSC began allowing limited video communication.

40. This is not a restriction, a modification, or a reasonable limitation. It is a complete severance of a 91-year-old ordained minister's religious life.

41. For decades, Rev. Demasio's religious participation went uninterrupted while she lived independently, while she received round-the-clock in-home care, and while a personal Temporary Guardian was assigned to her prior to the appointment of NYFSC. At no time prior to institutional guardianship did any party identify her religious participation as an issue. Her longstanding Bible study partners, including Deaconess Judith Walker and Selina Dzameshie, have been unable to meet with her in person since NYFSC assumed guardianship. Ms. Dzameshie, who for years prayed regularly with Dorcas in their native tongue and assisted with her in-home care, never received approval for even a video call.

42. NYFSC has described the restrictions as following "directives of the Court." In correspondence on February 6, 2026, NYFSC's counsel wrote to Petitioner: "As you know, our office must follow the directives of the Court. I will let you know if the Court amends its directives." The August 7, 2025, Order, however, identifies Plaintiff as a person "entitled to, and shall be permitted to, visit the Incapacitated Person." Order at 13. Despite formal request, NYFSC has identified no written order—by date, docket entry, or provision—authorizing the categorical religious deprivation.

43. If the "directives" to which NYFSC refers are oral instructions never reduced to writing, they cannot constitute the written, reviewable judicial determination required before fundamental

constitutional rights may be categorically restricted. If no such directives exist in an order, the deprivation is the guardian's own policy choice, dressed in the language of judicial authority.

44. The extrajudicial character of the restriction is further illustrated by its labeling. In appellate papers, the Court-Appointed Attorney ("CAA"), Kathy Lynch, has characterized Rev. Demasio's status as "protective custody," enforced by NYFSC. That term does not appear in the August 7, 2025, Order. No written order designates Rev. Demasio as being in "protective custody," articulates findings of necessity supporting such confinement, or authorizes categorical restrictions on clergy access or congregational participation. No order of protection exists, and no written judicial finding identifies Plaintiff as a safety risk to Rev. Demasio.

**F. The Broader Pattern of Isolation**

45. The religious deprivation exists within a broader pattern of isolation. NYFSC has described Rev. Demasio's location as "strictly confidential." Longstanding members of her community have been unable to meet with her under institutional guardianship. On January 29, 2026—Rev. Demasio's birthday—her closest relatives and friends were unable to reach her. Since the imposition of these restrictions, Rev. Demasio has missed major religious observances, congregational funerals, and holidays traditionally shared with her faith community.

46. Dr. Craig Moskowitz, a family friend, was denied permission to bring his young son to visit Rev. Demasio in person. NYFSC offered a video call in a group setting with members of a church community. As a practicing member of the Jewish faith, Dr. Moskowitz was not comfortable placing his child in that context. Although a one-on-one video call was subsequently offered, his son was no longer available at that time.

47. Despite residing in Ethiopia, Ebenezer Nii Amu First-Quao previously conducted Bible study conversations with Dorcas in their native language. He has since been unable to virtually meet

with Dorcas despite a formal request made on January 16, 2026. Mr. First-Quao attended school with Dorcas in Ghana and, during the late 1970s, rented a room in Dorcas's West Harlem apartment while working as a United Nations translator.

48. Relatives of Rev. Demasio who live outside New York City—including a nephew in Ghana, Emmanuel Dzidzor Demasio, with whom she held spiritual conversations for years—have reported no success in reaching her, even by video call, after sending international EMS letters.

49. Extended isolation from familiar people, rituals, and long-established relationships is widely understood in dementia care as a risk factor for cognitive and functional decline. Preservation of routine, identity, and meaningful community engagement is considered protective for individuals with neurocognitive disorders. Since the imposition of the restrictions described herein, Rev. Demasio has exhibited a sharp, observable cognitive and functional decline.

**G. Plaintiff's Direct Injuries and Third-Party Standing**

50. Plaintiff is a Christian whose religious life includes communal worship and Bible study. Intergenerational religious observance is a central tenet of his faith tradition. Plaintiff does not assert a right to control his mother's religious participation. However, NYFSC's categorical prohibition independently burdens Plaintiff's own religious exercise by making it impossible for him to engage in in-person communal worship with his mother.

51. The prohibition applies irrespective of the identity of clergy, congregants, or other church members and prevents any in-person joint religious observance.

52. Plaintiff's injury is of the same kind recognized when government action prevents an individual from worshipping with co-religionists. See, e.g., *Holt v. Hobbs*, 574 U.S. 352, 361 (2015); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam).

53. Plaintiff additionally has a protected liberty interest in familial association and joint religious exercise with his mother, free from arbitrary state interference. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Rivera v. Marcus*, 696 F.2d 1016, 1024–25 (2d Cir. 1982).

54. Plaintiff suffers concrete emotional and spiritual harm from being unable to participate in religious observances with his mother and reputational harm from being treated by a state-appointed guardian as posing a risk to such participation, despite the absence of any written judicial finding to that effect.

55. Rev. Demasio's ability to seek relief on her own behalf is materially hindered by incapacity and by the guardian's control over her communications, access to visitors, and daily life. The hindrance is compounded by a structural conflict of interest: NYFSC is simultaneously the entity imposing the religious restrictions and the entity with legal authority to authorize litigation on her behalf. In addition, the CAA, Ms. Lynch, filed papers in the Appellate Division opposing Plaintiff's motion for stay pending appeal, which sought relief from the ongoing restrictions on Rev. Demasio's religious participation. Under these circumstances, Plaintiff is an appropriate party to pursue prospective relief ensuring that Rev. Demasio's religious exercise is not subject to categorical restriction by extrajudicial directives. See *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

56. Plaintiff's injuries arise from the State's exercise of authority that he invoked in good faith through his guardianship petition, resulting in deprivations that exceed constitutional limits and contradict the limited protection he sought. Plaintiff has continued to cooperate with NYFSC in its administration of the guardianship, including providing personal items, medical and financial information, and insurance alerts, while limiting his challenge to the categorical restriction on religious participation. He has redirected all inquiries about Rev. Demasio to NYFSC.

15

## H. Plaintiff's Representative Capacity Under Rule 17(c)

57. In addition to the bases for standing set forth above, Plaintiff brings this action, in part, in a representative capacity as next friend of Rev. Dorcas Demasio pursuant to Federal Rule of Civil Procedure 17(c). Rev. Demasio is an incapacitated adult who, because of cognitive limitations and the practical constraints imposed by guardianship control over her access and communications, cannot meaningfully initiate or direct litigation on her own behalf.

58. The Supreme Court has recognized that a next friend may pursue relief on behalf of an incompetent person when the real party in interest is unable to litigate and the next friend has a significant relationship with, and is truly dedicated to the best interests of, the real party. See *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990). Plaintiff satisfies these criteria as Rev. Demasio's eldest son and former primary caregiver and as an individual who previously held power of attorney. He has initiated legal proceedings seeking protective measures for her welfare and religious participation.

59. Although NYFSC has been appointed guardian for Rev. Demasio, it is the entity responsible for implementing the restrictions challenged in this action. For the reasons set forth in Paragraph 55, Rev. Demasio lacks a practical avenue to vindicate her federal rights absent next-friend representation. If the Court concludes that a formal representative is required, Plaintiff respectfully requests appointment under Rule 17(c)(2) as guardian ad litem (or other appropriate representative) for the limited purpose of pursuing the claims asserted here. See *Whitmore, 495 U.S.* at 163–64; *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

## I. The Absence of an Adequate State Remedy

60. Because the restrictions NYFSC enforces are not embodied in any written order, Plaintiff cannot appeal them under New York law or obtain meaningful correction through available state procedures.

61. Since August of 2025, Plaintiff has sought relief within the guardianship proceeding through multiple channels. During a January 22, 2026, conference before Justice Perry-Bond, Plaintiff raised Rev. Demasio's exclusion from church services and followed with a January 26, 2026, letter application offering multiple proposals to restore her community integration and religious participation. On February 9, 2026, Plaintiff provided written notice to NYFSC's counsel, president, and board leadership requesting accommodation of Rev. Demasio's religious participation. NYFSC did not respond to the notice and has continued to enforce the categorical restriction on in-person clergy access and congregational participation. On February 18, 2026, Plaintiff served an Affidavit in Support of Motion Regarding Religious Participation on all parties, including the Court Examiner; as of the date of this Complaint, no party has responded and no written order has issued modifying, authorizing, or justifying the categorical religious prohibition. While Plaintiff pursued relief within the existing guardianship framework, the pendency of that motion neither adjudicates nor remedies the independent federal constitutional violations asserted here.

62. Plaintiff has pursued relief within the state appellate system to obtain clarification and protection of Rev. Demasio's constitutional rights. In August 2025, Plaintiff moved for a stay pending appeal; that motion was referred sua sponte to a panel of the Appellate Division on an expedited schedule and denied in October 2025, without written explanation. Plaintiff thereafter sought leave from the panel to appeal its nonfinal order to the New York Court of Appeals, citing the first-impression constitutional questions presented; the Appellate Division denied the

application in January 2026 (again with no comment). Plaintiff has perfected his merits appeal and, through motion papers, has formally requested expedited consideration in light of Rev. Demasio's age and medical condition. In the interim, however, the categorical restriction on religious contact remains in effect. The constitutional question presented here—whether a court-appointed guardian may categorically prohibit an incapacitated person's religious participation absent written findings—has not been addressed.

63. As a nonagenarian, Rev. Demasio is suffering from a progressive, irreversible neurological condition. Each month of continued deprivation diminishes both her capacity to participate in religious life and the likelihood that meaningful participation can be restored.

64. Rev. Demasio's CAA, Ms. Lynch, was appointed by the same guardianship court that selected NYFSC and is compensated pursuant to court order from Rev. Demasio's income. Rev. Demasio initially expressed a desire to retain outside counsel on the record, but the court maintained Ms. Lynch as CAA. In appellate papers opposing Plaintiff's motion for stay pending appeal, the CAA acknowledged that Rev. Demasio is "living a segregated existence," while opposing relief from the no-contact regime. No independent motion or application has been filed within the guardianship proceeding seeking accommodation of Rev. Demasio's religious participation.

**J. Structural Context**

65. The circumstances presented here arise within a guardianship framework that vests court-appointed fiduciaries with substantial authority over an incapacitated person's residence, associations, medical decisions, and daily life. Although guardians operate under judicial supervision, day-to-day implementation of restrictions is frequently exercised by the guardian rather than through contemporaneous written judicial directives.

66. When restrictions affecting fundamental constitutional rights are implemented through informal practices, oral characterizations, or unwritten understandings rather than written, reviewable judicial findings, the affected individual may lack a clear procedural avenue for timely appellate correction. In such circumstances—particularly where, as here, no written order has ever addressed the categorical religious ban—federal jurisdiction serves its established role in adjudicating independent constitutional claims arising from the exercise of state-delegated authority.

**CLAIMS FOR RELIEF**

**COUNT I Violation of the First Amendment—Free Exercise Clause (42 U.S.C. § 1983)**

67. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68. The Free Exercise Clause of the First Amendment, applicable to state actors through the Fourteenth Amendment, protects the right to engage in communal religious worship, congregational fellowship, and pastoral association. See *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

69. NYFSC, acting under color of state law as a court-appointed guardian exercising plenary state-delegated authority, has imposed a categorical prohibition on Rev. Demasio's in-person religious participation.

70. The prohibition independently and substantially burdens the religious exercise of Plaintiff, whose communal, intergenerational worship with his mother was a longstanding religious practice and has been categorically prevented by NYFSC's policy.

71. Plaintiff seeks prospective relief to vindicate Rev. Demasio's Free Exercise rights based on the representative capacities alleged above, including Rule 17(c) relief as appropriate.

19

72. The categorical prohibition is not supported by any individualized, written judicial finding of risk and is not reasonably related to Rev. Demasio's safety or well-being. It is categorical rather than tailored: NYFSC has not identified any basis to conclude that supervised worship or in-person pastoral visits with longstanding members of Rev. Demasio's faith community would pose any risk to her safety. The prohibition affirmatively contravenes the Order's own requirement that the guardian respect Rev. Demasio's independence, self-determination, and personal preferences.

73. Under Article 81, the burden does not fall on Rev. Demasio to justify the exercise of her right to maintain religious participation, including attendance at congregational worship. The burden falls on the party seeking to restrict that right to demonstrate—through individualized findings supported by clear and convincing evidence—that the restriction is necessary and that no less restrictive alternative is available. A categorical prohibition imposed without such findings reverses that statutory and constitutional structure.

74. NYFSC's policy operates as a categorical and indefinite suspension of in-person religious participation. The Order itself authorizes visitation and contains no provision eliminating religious participation. In practice, Rev. Demasio has been wholly deprived of embodied religious exercise for the duration of NYFSC's administration. Such a categorical and discretionary burden on core religious exercise is subject to constitutional scrutiny under *Church of the Lukumi Babalu Aye v. City of Hialeah* and related precedent.

**COUNT II Violation of the Fourteenth Amendment—Procedural Due Process (42 U.S.C. § 1983)**

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. When the State deprives an individual of a protected liberty or property interest, the Due Process Clause requires, at a minimum, notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

77. The categorical and indefinite suspension of Rev. Demasio's in-person religious exercise and community access—which independently implicates Plaintiff's protected interests in shared religious practice and familial association—was imposed without notice or an opportunity to be heard regarding the restriction on religious participation, and without any written judicial findings articulating the basis for such deprivation.

78. NYFSC invokes oral "directives of the Court" that are not memorialized in any written order, cannot be reviewed on the record, and cannot be meaningfully challenged through available state procedures. By relying on unverifiable oral instructions to justify ongoing deprivations of fundamental rights—while refusing to identify any written order that supports its position—NYFSC has deprived Plaintiff of the procedural protections that the Fourteenth Amendment requires before the State may extinguish constitutionally protected interests.

79. The risk of erroneous deprivation is substantial where core religious and familial interests are suspended pursuant to unwritten directives lacking articulated standards or reviewable findings, and the governmental burden of issuing a written order setting forth basic findings is minimal. Under the balancing framework of *Mathews v. Eldridge*, the interests at stake weigh in favor of requiring written, reviewable authorization before the State may impose a categorical suspension of in-person religious participation.

80. The Order itself provides that the guardian shall "exercise only those powers that the Guardian is authorized to exercise by order of the Court." Order at 7 (item 1). NYFSC asserts that its restriction is court-authorized, yet no written directive has been identified. The imposition of a

categorical restriction on religious exercise based on unwritten authority fails to satisfy the requirements of procedural due process.

81. NYFSC's conduct violates procedural due process as enforced through 42 U.S.C. § 1983.

**COUNT III Violation of the Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983) (Pled in the Alternative)**

82. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

83. In the alternative to Counts I and II, the Due Process Clause of the Fourteenth Amendment protects against arbitrary governmental interference with deeply rooted liberty interests, including familial association and intimate association. See *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Roberts v. United States Jaycees*, 468 U.S. 609, 617–20 (1984). In a non-emergency, deliberative context, executive action violates substantive due process when it reflects deliberate indifference to protected liberty interests. *See County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998); *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007).

84. The deprivation at issue was not the product of an emergency response or a split-second judgment. NYFSC has maintained the categorical prohibition for seven months in a deliberative administrative context. During that period, Plaintiff formally notified NYFSC in writing of Rev. Demasio's lifelong religious identity and requested accommodation of in-person religious participation consistent with the Order. NYFSC did not respond and instead continued to enforce the prohibition without articulating any individualized findings or written justification.

85. The sustained and categorical deprivation of deeply rooted liberty interests—maintained in a deliberative context, after written notice, without individualized findings, and in contravention of the Order's own directives—constitutes arbitrary executive action and violates substantive due process as enforced through 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. A declaratory judgment that NYFSC's categorical prohibition on Rev. Dorcas Demasio's religious participation—including in-person congregational worship, Bible study, clergy access, and pastoral care—absent any written, individualized court order and in contravention of the August 7, 2025, Order's directives, violates the First and Fourteenth Amendments to the United States Constitution;

B. A declaratory judgment that the implementation of a categorical religious prohibition without written findings, memorialized authorization, or reviewable procedures violates procedural due process;

C. A preliminary and permanent injunction prohibiting NYFSC from enforcing any categorical restriction on Rev. Demasio's in-person religious participation—including congregational worship attendance, access to clergy and pastoral care, and contact with Bible study partners and longstanding members of her faith community—unless and until it obtains a written order from the New York Supreme Court supported by specific, individualized findings and consistent with constitutional standards expressly authorizing such restriction. Any accommodation of Rev. Demasio's religious exercise must provide meaningful access to congregational worship and pastoral care consistent with her longstanding religious practice, including reasonable facilitation of attendance consistent with the guardian's ordinary custodial responsibilities; isolated or occasional accommodations that do not permit genuine participation in congregational life shall not satisfy this requirement.

D. To the extent Defendant contends that any restriction on Rev. Demasio's in-person religious participation is authorized by court order or other judicial directive, Defendant shall identify such

23

written authorization and the specific findings supporting it in any submission asserting compliance with the injunction entered in this action.

E. An award of nominal damages in the amount of one dollar for past constitutional violations;

F. An award of costs and disbursements of this action;

G. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988, to the extent permitted by law;

H. Such other and further relief as the Court deems just and proper.

Dated: March 4, 2026
New York, New York
Respectfully submitted,

_____
NUNYO DEMASIO
Plaintiff, *pro se*
P. O. Box 230592
New York, NY 10023
(646) 373-7643
nunyo@nunyodemasio.com

**VERIFICATION**
I, Nunyo Demasio, declare under penalty of perjury that the foregoing Complaint is true and correct.
Executed on March 4, 2026.

_____
NUNYO DEMASIO

24